## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DON LENT, as Personal Representative of the
Estate of VIRGINIA LENT, deceased

**F I L E D**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

        **Plaintiff,**

vs.

FEB 2 7 2001    **CIVIL NO. 00-486 RLP/LFG**

ALBUQUERQUE ASSISTED LIVING LTD.
d/b/a CARESTONE ASSISTED LIVING AT
QUINTESSENCE, HEARTHSTONE G.P. INC.
and HEARTHSTONE ASSISTED LIVING, INC.,

CLERK

        **Defendants.**

### MEMORANDUM OPINION and ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment (Docket No.54) seeking dismissal of Plaintiff's Complaint in its entirety. The Court, having read the Motion, the memoranda in support of and in opposition to the Motion and being otherwise fully advised,

**FINDS:** That the Motion should be granted in part and denied in part.

### DISCUSSION

Plaintiff, on behalf of Virginia Lent, entered into a Residency Agreement with Albuquerque Assisted Living Ltd. d/b/a Carestone Assisted Living at Quintessence ("Carestone," herein) on or about February 3, 1999. Undisputed Fact No. 13; Ex. E to Docket No. 55 ("Residency Agreement," herein). Carestone is an Adult Residential Care Facility licensed by the State of New Mexico, providing various levels of care to its residents. Undisputed Fact No. 5; Carestone Program Narrative, Ex. A to Residency Agreement.



Virginia Lent's physical and mental condition was assessed on February 3, 1999.  Based on this assessment her care needs were described as follows:

| | | |
|---|---|---|
| *Ambulation* | ✓ Walker (uses walker but needs little or no assistance in standing or walking; may need or desire escort assistance). | ALL-D- Must use walker for ambulation daily.<br><br>Doctor wants her to use walker but she may not want to Chronic hip pain. |
| *Transferring* | ✓ Independent (needs no assistance) | ALL-D- Needs transferring supervision for reassurance. |
| *Eating* | ✓ Independent (needs no assistance) | |
| *Bathing* | ✓ Needs assistance (may need back of feet washed, washcloth soaped, help in and out of shower, can wash own private parts) | am - remind to shower adjust water temp. and standby supervision as needed.<br>Very private |
| *Grooming* | ✓ Needs assistance (may need staff assistance in any area of personal grooming | Hair done once week.  Hard time brushing back of hair. AM-D- help brush back of hair. |
| *Dressing* | ✓ Independent (needs no assistance) | |
| *Toileting* | ✓ Needs supervision (may need reminders, cueing) | Until stabilized. AM-D- remind to toilet when waking and before and after meal<br>PM-D – |
| *Bladder continence* | ✓ Is bladder continent (does not need to wear any type of adult protective garment). | Is concerns (sic) of this. Accident - Medication may help. |
| *Bowel continence* | ✓ Is bowel continent (does not need to wear any type of adult protective garment). | |
| *Vision* | ✓ Good with or without correction | ALL-D - glasses.  Steps cause problem |

2

| *Cognitive* | ✓ Is forgetful <u>or confused</u> ( may need staff reminders). | In beginning |

Resident Initial Assessment, Ex. C to Docket No. 55.

Virginia Lent suffered a fall on May 6, 1999, which altered the level of care she required. Carestone, through its agent/administrator, Teresa Payne, was advised of certain additional care needs Virginia Lent would require. Carestone undertook to provide for Virginia Lent's additional care needs. Affidavit of Teresa Payne, Exhibit E to Docket No. 57. Virginia Lent remained at Carestone until some time in June 1999, when she was removed by her family. (Complaint, ¶ 23).

Plaintiff's Complaint seeks damages from Defendants based upon negligence proximately causing Virginia Lent to fall while unattended and without her walker on May 6, 1999; negligence proximately causing injuries to Virginia Lent occurring at various times from May 7, 1999 to June 1999; and negligence proximately causing or allowing the theft of valuables from Virginia Lent.

Defendants rely upon ¶¶ 4(d), 9, 18(b), 18(d) and 21 of the Residency Agreement in asserting their right to Summary Judgment:

**Residency Agreement, Paragraphs 4(d) and 21.**

Paragraph 4d and 21 of the Residency Agreement provide in material part:

4d    <u>Changes in Required Service or Rent</u>. . . . If Resident requires additional or modified services, Resident must request those services in writing. **If** at any time **conditions** of this Agreement **change materially as determined by Carestone, Carestone may** also **require Resident to execute a new Residency Agreement**. Additionally, from time to time as Carestone deems necessary, Carestone may increase or decrease the base rent and other charges under this Agreement. . . (emphasis added).

21    <u>Entire Agreement; Effect; Waivers; and Notices</u>. . . . Carestone and Resident have not entered into any oral agreements. This Agreement represents Carestone's and Resident's entire agreement. This Agreement will not be changed except by subsequent written agreement signed by both Carestone and Resident. . . . This

3

Agreement will apply to (sic) equally to the parties' respective heirs, executors, administrator, legal representatives, successors, and permitted assigns . . .

There is a genuine issue of material fact as to whether Carestone waived the contractual provisions contained in ¶¶4d and 21 of the Residency Agreement, pertaining to written notice of a resident's need for additional or modified services. Affidavit of Teresa Paine, Exhibit E to Docket No. 57; J.R. Hale Contracting Co., Inc. v. United New Mexico Bank at Albuquerque, 799 N.M. 581, 585 (N.M. 1990) (The intent to waive a contractual provision may be implied by a party's conduct).

### Residency Agreement, Paragraph 18b

Paragraph 18b of the Residency Agreement provides:

Authorization for Carestone to Refer Resident to a Physician: Carestone may designate any physician to attend to Resident at any time the Resident requires medical care, as determined by Carestone and its staff in good faith. Resident is responsible for any expenses resulting from that medical care which is not a service provided by Carestone. The Carestone Parties will not be liable for any act or omission in following the instructions of any physician. Resident and Resident's heirs, legal representatives and administrators, fully release and discharge the Carestone Parties from any liability in connection with those acts or omissions.

By its terms, Paragraph 18b pertains to those situations where Carestone acts in conjunction with a physician to provide care to a resident, and not to those services routinely provided by Carestone in its capacity as an assisted living facility. There is a genuine issue of material fact as to whether the care required by and allegedly negligently denied to Virginia Lent as of May 7, 1999, was medical care as opposed to care routinely offered by Carestone to its residents who required it. Affidavit of Teresa Payne, Exhibit E to Docket No. 57.

### Residency Agreement, Paragraph 18d

Paragraph 18d of the Residency Agreement provides in material part:

4

Resident's Indemnification of Carestone. Due to state laws, Carestone may not admit or retain as a resident any person who requires medical or nursing care beyond those routinely provided at the Facility. And Carestone will not provide medical services or assistance not addressed in this Agreement. Therefore, Resident indemnifies, defends and holds harmless the Carestone Parties from all claims, causes of action (etc). . . for personal injury or death as a result of Resident requiring medical services, assistance or care above and beyond the capabilities of Carestone, even if caused in whole or in part by the negligence of the Carestone Parties. . .

As previously stated, there are genuine issues of material fact as to whether the care required by Virginia Lent as of May 7, 1999 was beyond that routinely provided by Carestone, and whether Carestone waived contractual provisions requiring that changes in the level of care to be provided be in writing. To the extent the "medical services, assistance or care" required by Virginia Lent were not above and beyond the capabilities of Carestone, no indemnity attaches by reason of ¶ 18d.

**Residency Agreement, Paragraph 9**

Paragraph 9 of the Residency Agreement provides in material part:

Services by Carestone . . . Services provided by Carestone do not limit the right of Resident to use Resident's own personal possessions . . . Each Resident must keep his or her own money. CARESTONE IS NOT RESPONSIBLE OR LIABLE FOR THE LOSS, THEFT OR DAMAGE TO ANY PERSONAL PROPERTY, VALUABLES AND/OR MONIES KEPT BY RESIDENT IN RESIDENT'S APARTMENT; AND RESIDENT BEARS THE ENTIRE RISK OF LOSS WITH RESPECT TO THOSE ITEMS. RESIDENT RELEASES CARESTONE TO THE FULLEST RESPONSIBILITY ALLOWED BY LAW FROM ANY LIABILITY OR RESPONSIBILITY DUE TO ANY LOSS THEFT OR DAMAGE TO THOSE ITEMS. (emphasis in the original).

Don Lent read and agreed to this term of the Residency Agreement. (Undisputed Fact No. 20).

The terms of this provision are unambiguous. Richardson v. Farmers Ins. Co., 112 N.M. 73, 74, 811 P.2d 571, 572 (1991) ("Absent ambiguity, provisions of [a] contract need only be applied, rather than construed or interpreted."). Plaintiff agreed to absolve Defendant from any liability related to theft of personal property. Defendants are entitled to Summary Judgment on Plaintiff's

claims based on theft of valuables from Virginia Lent.

Defendants' Motion does not address the circumstances leading up to Virginia Lent's fall on May 6, 1999. Genuine issues of material fact exist as to whether Defendants' allegedly negligent acts or omissions proximately caused this fall.

**IT IS THEREFORE ORDERED AS FOLLOWS:**

Defendants are granted Summary Judgment as to Plaintiff's claims for damages arising from the theft of personal property, and that claim is hereby dismissed with prejudice.

All remaining portions of Defendants' Motion for Summary Judgment are denied.

**IT IS SO ORDERED.**

**RICHARD L. PUGLISI**
**UNITED STATES MAGISTRATE JUDGE**
**(sitting by designation)**